UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14 CR 208 HEA (NAB) |
| | ) | |
| MARDELL MCGEE, | ) | |
| a/k/a Mardell Smith, | ) | |
| a/k/a Mardell McGee-Smith, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

COMES NOW the United States of America, by and through its attorneys, Richard G.

Callahan, United States Attorney for the Eastern District of Missouri, and John M. Bodenhausen,

Assistant United States Attorney for said District, and states the following in response and

opposition to Defendant's Motion to Suppress Statements (Doc. No. 31):

**INTRODUCTION & OVERVIEW OF ANTICIPATED FACTS**[1]

1.      Mardell McGee ("McGee") has been charged with mail fraud, arson in

furtherance of mail fraud, and money laundering.    According to the Indictment, the charges

relate to an insurance fraud scheme in which McGee caused a residence at 926 Bayard Avenue,

St. Louis, Missouri, to be substantially damaged by fire in late February 2012.    Thereafter,

McGee caused a false and fraudulent insurance claim to be submitted to State Farm Insurance.

State Farm Insurance paid the claim and McGee pocketed the vast majority of the insurance

---

[1] The introduction and factual allegations are intended as a general guide to the Court in
anticipation of an evidentiary hearing to resolve the pending motion to suppress.   The
introduction and factual allegations are not intended as a comprehensive statement of the
government's case, and are not intended to be in the nature of a Bill of Particulars that would fix or
limit the government.

proceeds.

2.     The insurance fraud scheme was investigated by the United States Postal

Inspection Service ("USPIS"), the St. Louis County Police Department, and the United States

Secret Service.

3.     Postal Inspector Dan Taylor and St. Louis County Detective A.J. Soll interviewed

McGee twice in connection with the investigation.    The investigators first interviewed McGee

on July 18, 2013, at the USPIS field office in downtown St. Louis.    The second interview

occurred on July 30, 2013, at McGee's residence/business located on Halls Ferry Rd., in St.

Louis County.    Both interviews were voluntary and non-custodial in nature.    Both interviews

were documented in reports that were provided to McGee at arraignment.

4.     Regarding the first interview of McGee, Inspector Taylor spoke with McGee and

advised him of a desire to speak with McGee regarding a number of properties, including 926

Bayard and McGee's own home at 1415 Kienstra, Calverton Park, Missouri.[2]   McGee agreed to

voluntarily appear at the USPIS office on July 11, 2013, but later asked to reschedule the

interview so that he might consult with an attorney.    The interview was rescheduled for July 18,

2013.    McGee arranged for his own transportation to the USPIS office and appeared voluntarily

on July 18th.    McGee met with Inspector Taylor and Det. Soll in a conference room, not an

interrogation room.    McGee never advised that he was represented by Nathan Cohen (or any

other attorney) in connection with the federal arson and fraud investigation.    At one point

during the first interview McGee indicated that he was unsure whether he needed to consult with

an attorney.    The investigators reminded McGee that he was not in custody and McGee agreed

to continue with the interview.    McGee was offered a drink and permitted to use the restroom

---

[2] McGee's home on Kienstra, in St. Louis County, was substantially damaged by a fire in June
2013.   The undersigned believes this is why McGee was reportedly living at his business on Halls
Ferry in July 2013.

during the interview.   The investigators did not make any threats or promises to McGee, nor did they exert any physical, mental, or other improper pressure on him.   The investigators advised McGee as to the general nature of their inquiry, and allowed McGee to tell his side of the story before he was confronted with evidence showing that he was not being truthful.   McGee made numerous voluntary, relevant, and incriminating statements during the course of the interview. McGee also acknowledged he was aware of the investigators' prior attempt to interview Sabrina Washington, his girlfriend, the mother of his adult daughter, and the purported owner of the Bayard residence.[3]

5.      The second McGee interview occurred on July 30, 2013, at McGee's office/residence on Halls Ferry Road after McGee advised Inspector Taylor that he had e-mails and documents to provide.   Inspector Taylor and Det. Soll agreed to meet McGee at his office/residence.   In addition to showing the investigators the e-mails and documents, McGee voluntarily advised that he wanted to clarify some of the information he provided during the first interview.   McGee affirmed some of the information he previously provided and also changed some information.   McGee also showed the investigators e-mails he suggested would incriminate other persons in the arson scheme.   The investigators did not accept the e-mails from McGee at that time because they were disorganized.   McGee offered to provide a written statement and provide the e-mails in a more organized fashion at a later date.[4]   At no time during the meeting on July 30, 2013, did McGee indicate that he was represented by a lawyer in this matter or that he wanted to speak with a lawyer before speaking with the investigators.

---

[3] On July 8, 2012, prior to the first McGee interview, Inspector Taylor contacted McGee's girlfriend Sabrina Washington, the purported owner of 926 Bayard Avenue at the time of the arson.   Inspector Taylor and Det. Soll attempted to interview Washington.   After answering a few questions, Washington terminated the interview and asked the investigators to leave.

[4] McGee later produced some e-mails pursuant to subpoenas issued to his various businesses.

6.    On or about December 18, 2013, five months after meeting with the investigators, McGee contacted Inspector Taylor and advised that he wanted to cooperate and referenced a lawyer, Nathan Cohen.

## LAW & ARGUMENT

7.    McGee asserts that his statements to investigators should be suppressed because, according to him, he was interviewed in violation of his Fifth Amendment rights.    The Court should overrule and deny McGee's motion.

### *Miranda* does not apply because, *inter alia*, McGee was never in custody when questioned.

8.    McGee was not in custody when he was questioned.    Therefore, the proscriptions of Miranda v. Arizona, 384 U.S. 436 (1966), do not apply.    See Illinois v. Perkins, 496 U.S. 292, 297 (1990).[5]    A person is "in custody" for Miranda purposes when, under a totality of the circumstances, that person's "freedom of action is curtailed to a degree associated with a formal arrest."    Berkemer v. McCarty, 468 U.S. 420, 440 (1984); United States v. Czichray, 378 F.3d 822, 826 (8th Cir. 2004).

9.    The Eighth Circuit has identified a number of non-exhaustive factors to consider in determining when a person is in custody within the meaning of Miranda.    See United States v. Galceran, 301 F.3d 927, 929-30 (8th Cir. 2002); United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990).    Those factors are as follows:

> (1) whether the suspect was informed that the suspect was free to leave or that the suspect was not under arrest;
> (2) whether the suspect possessed unrestrained freedom of movement during questioning;
> (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;

---

[5]  This remains true even if the person questioned is suspected of criminal activity or the focus of a criminal investigation.    See Oregon v. Mathiason, 429 U.S. 492, 495 (1977); Beckwith v. United States, 425 U.S. 341, 345 (1976).

(4) whether police used strong-arm tactics or deceptive strategies during questioning;

(5) whether the atmosphere of the questioning was police dominated; and

(6) whether the suspect was arrested at the end of the questioning.

Galceran, 301 F.3d at 929 (citing Griffin).

10.     The circumstances surrounding the interviews demonstrate that McGee was not "in custody" for Miranda purposes during the first or second interview.    Although the first interview was conducted at the Postal Inspection Service office, McGee scheduled that interview at his convenience and he provided his own transportation.    McGee met with the investigating agents in a conference room.    The investigators permitted McGee to use the restroom and offered him refreshments.    Most importantly, McGee was advised and reminded that he was not in custody and he was not arrested at the conclusion of the interview.

11.     The second interview occurred, essentially, as a result of McGee's request to provide e-mails and documents to the investigating agents.    The second interview was conducted at McGee's business / residence.    McGee was not arrested at the end of the interview and, in fact, the investigators returned the documents to McGee that he offered to provide to them because they were in disarray.

12.     The facts and circumstances lead to a conclusion that McGee was not in custody for Miranda purposes during either interview with federal investigators.    Therefore, he was not entitled to Miranda rights prior to being questioned by law enforcement.

**McGee never clearly or unequivocally invoked any right to counsel.**

13.     To the extent McGee may have had a right to counsel in the non-custodial interviews conducted in July 2013, he never clearly or unequivocally invoked such a right. Therefore, the investigating agents were justified in questioning McGee.

14.     The courts have consistently held that equivocal or ambiguous references to

consulting with an attorney are insufficient to invoke a right to counsel.   See United States v. Havlik, 710 F.3d 818, 821 (8th Cir. 2013) (citing Davis v. United States, 512 U.S. 452, 459 (1994) (explaining that "if a suspect makes reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning")).   Investigating officers are not required to "ask clarifying questions when a suspect makes an ambiguous statement regarding counsel."   Id.

15.   Despite having ample experience with the federal criminal justice system, McGee never advised the investigating agents that he was invoking his right to have counsel present when questioned.   In fact, McGee was given an opportunity to consult with an attorney prior to appearing for the first interview on July 18, 2013.   McGee appeared for the interview without counsel present and never told the investigators that he wanted counsel present.   Rather, after being confronted by the investigators, McGee merely stated that he was unsure whether he needed to consult with an attorney.   McGee was reminded he was not in custody and voluntarily continued with the interview.   Such an equivocal and ambiguous reference to an attorney is insufficient to notify investigators that they are to cease questioning.[6]

**McGee's non-custodial statements to investigators were voluntary.**

16.   McGee's statements were not the product of coercion, threats, or violence such that those statements were involuntary or untrustworthy.   "To decide the voluntariness of a confession, [the court] examine[s] the totality of the circumstances to determine whether pressures exerted by the authorities overwhelmed the defendant's will."   United States v.

---

[6] In Havlik, the Eighth Circuit explained that asking the question "I guess I need [a lawyer], don't I?" was insufficient to invoke a right to counsel.   710 F.3d at 821.   The Court also noted that a suspect asking "Could I call my lawyer?" was likewise ambiguous.   Id. (quoting Dormire v. Wilkinson, 249 F.3d 801, 805 (8th Cir. 2001)).

Martin et al., 369 F.3d 1046, 1055 (8th Cir. 2004) (applying test to non-custodial questioning)
(quoting United States v. Rodriguez-Hernandez, 353 F.3d 632, 636 (8th Cir. 2003)); see also
United States v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995).   "A statement is involuntary when it
was extracted by threats, violence, or express or implied promises sufficient to overbear the
defendant's will and critically impair his capacity for self-determination."   United States v.
Perry, 714 F.3d 570, 574 (8th Cir. 2013) (quoting United States v. LeBrun, 363 F.3d 715, 724 (8th
Cir. 2004)).

17.    The Courts have made clear that some level of pressure is normal and acceptable.
See Martin et al., 369 F.3d at 1055; see also United States v. Glauning, 211 F.3d 1085 (8th Cir.
2000) (interview in restroom).   Moreover, deception and taking a sympathetic attitude toward
the suspect does not render a statement involuntary.   Id.; see also Perry, 714 F.3d at 575
(explaining that "any deception regarding whether [the defendant] was the target of the
investigation did not render his statements involuntary").

18.    In the present case, there were no threats or promises made to McGee.   McGee
has not even alleged facts close to suggesting conduct that could have overborne his will or
impaired his capacity for self-determination.   To the contrary, after the first interview, McGee
invited the investigators to his residence/business on Halls Ferry Rd. so that McGee could show
them e-mails and records.   Accordingly, any statements made by McGee were voluntary and
should not be suppressed.

19.    Finally, McGee's motion to suppress suggests that investigators interviewed him
without the permission of his alleged attorney – Nathan Cohen.   McGee did not notify the
investigators that Mr. Cohen represented him in connection with the federal investigation until
December 2013, five months after the two interviews in question occurred.

## CONCLUSION

20.     McGee was not in custody when questioned by investigators in July 2013.   As such, McGee was not entitled to his rights per <u>Miranda</u>.    Moreover, at no time during such questioning did McGee unambiguously or unequivocally invoke his right to have counsel present.   In fact, it was not until December 2013 that the undersigned learned that McGee had counsel at all.   Finally, the circumstances surrounding the questioning of McGee demonstrate beyond any doubt that the statements he made were voluntary.

WHEREFORE, the government respectfully requests this Honorable Court to OVERRULE and DENY McGee's Motion to Suppress Statements (Doc. No. 31).

Respectfully Submitted,

RICHARD G. CALLAHAN
United States Attorney

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
Assistant United States Attorney


## CERTIFICATE OF SERVICE

I hereby certify that on  11/14/14   the foregoing was filed electronically with the Clerk of the Court for service upon counsel for defendant –

Patrick Deaton

s/ *John M. Bodenhausen*
Assistant United States Attorney