UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 4:14CR208 HEA |
| | ) | |
| MARDELL MCGEE, | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION, MEMORANDUM AND ORDER**

This case is before the Court on defendant's *pro se* Emergency Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), [Doc. No. 73], and the supplemental Motion for Compassionate Release filed by counsel for defendant [Doc. No. 81]. The government opposes the Motions. For the reasons set forth below, the Motions are denied.

### Facts and Background

On April 30, 2015, defendant pleaded guilty to one count of Mail Fraud, in violation of 18 U.S.C. § 1341, and one count of Arson in Furtherance of Mail Fraud, in violation of 18 U.S.C. § 844(h)(1). The conduct upon which defendant's convictions are based is summarized as follows: Defendant owned several businesses through which he bought, sold, and leased residential property in the St. Louis area. In 2009, a company owned by defendant purchased the property at 926 Bayard Avenue in St. Louis, Missouri. To disguise his own proprietary interest in

the property, defendant orchestrated a straw man purchase in 2011, wherein Sabrina Washington, the mother of one of defendant's children, purportedly purchased the property for $100,000 and finance the sale through Nationwide Lending Services, which was also owned by defendant. Washington made few, if any, mortgage payments. At defendant's instruction, Washington obtained a homeowner's insurance policy from State Farm, which provided coverage for the dwelling and personal property in the event of a fire. The policy protected Nationwide Lending as lienholder.

On February 27, 2012, defendant set fire to the property. Washington was not home, as defendant had instructed her to leave town for the weekend. Defendant attempted to make the fire appear to be an act of vandalism by spray painting threats on the walls and dumping paint throughout the house. On July 16, 2012, defendant caused a sworn statement in proof of loss to be filed with State Farm on behalf of Washington and Nationwide Lending. Therein, defendant falsely stated that he did not cause or procure the fire loss at the property. As a result of his false statement, on October 30, 2012, State Farm mailed a check for $88,265.25 issued to Washington, Nationwide Lending, and a private adjuster. After the private adjuster took its commission, it reissued a check to Washington and Nationwide Lending for $80,265.25 which was deposited into an account controlled by defendant.

On August 3, 2015, Defendant was sentenced to a total of 161 months imprisonment, a 3-year term of supervised release, special assessment of $200, and $127.978.37 in restitution. Defendant is presently serving his sentence at Marion

USP in Marion, Illinois. He has not incurred any violations while in the BOP and has maintained employment during his incarceration. The BOP designates defendant as a minimum risk for recidivism. His projected release date is December 31, 2026. If granted a sentence reduction and released early, defendant plans to live in one unit of a 4-unit building he owns with his son and ex-wife in St. Louis.

Defendant faxed a letter to the warden of Marion USP requesting a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) on April 7, 2020. His request was denied. Defendant's BOP records reflect his medical issues, including morbid obesity, hypertension, hyperlipidemia, chronic kidney disease, and prediabetes. The CDC has identified hypertension, chronic kidney disease, and diabetes as conditions which increase a person's risk of severe illness from COVID-19 infection. *COVID-19: People with Certain Medical Conditions*, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited January 11, 2021).

Defendant has already contracted COVID-19 once in Marion USP. He tested positive for the virus on July 21, 2020, and experienced symptoms including shortness of breath, fever, and body aches. The Compassionate Release Report prepared by the United States Probation Office for defendant's Motions indicates that defendant had no active COVID-19 symptoms as of the date of that report, September 10, 2020. Defendant notes that both the World Health Organization and CDC have said that future immunity for people who have already been infected with COVID-19 is not understood and that there have been reports of reinfections. He

4

further cites the possibility of long-term effects of COVID-19, including heart and lung problems. Defendant acknowledges that Marion USP has taken steps to mitigate the spread of COVID-19 but notes that two inmates there died from the virus and that the virus is still affecting inmates and staff.  Defendant admits that the nature and impacts of COVID-19 are largely unknown but argues that Marion USP is not safe and that defendant "is still at a very high risk of death, serious illness, or lifelong impairment should he remain in custody."

## Discussion

Under Section 603(b) of the First Step Act, effective December 21, 2019, an inmate may now himself (or through his advocate) file a motion for compassionate release pursuant to 18 U.S.C. § 3582(c). Previously, a court could only act to reduce a defendant's sentence for "extraordinary and compelling reasons" if the Director of BOP filed such a motion. As the proponent of the motion, defendant bears the burden of proving both that he has satisfied the procedural prerequisites for judicial review and "extraordinary and compelling reasons" exist to support the motion. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

In evaluating defendant's request for reduction in sentence on its merits, 18 U.S.C. § 3582(c)(1)(A)(i) requires a court to find that "after considering the factors set forth in section 3553(a) to the extent they are applicable," that "extraordinary and compelling reasons warrant such a reduction." Any reduction must be consistent

with applicable policy statements issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). United States Sentencing Guideline § 1B1.13, which governs compassionate-release reductions, provides some specific examples, including:

> (A) Medical Condition of the Defendant.—
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old;

(ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

> (C) Family Circumstances.—
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver

for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Because defendant filed a request for sentence reduction with the warden which was subsequently denied, he has exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A).

In support of his request, defendant cites the COVID-19 pandemic, conditions within the BOP, and his medical conditions, particularly hypertension, prediabetes, and status post-COVID-19 infection. He also cites his good behavior while in the BOP, his "minimal, non-violent criminal record," and his home plan.

The Court does not find that defendant has met his burden of proving that extraordinary and compelling circumstances exist warranting a reduced sentence. Defendant was unfortunately infected by the COVID-19 virus but has since recovered. There is no evidence before the Court that defendant is not receiving proper medical treatment for his chronic conditions, or that he did not receive proper treatment and care while he had COVID-19. Although possible, the CDC states that cases of COVID-19 reinfection are rare. *COVID-19: Reinfection*, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited January 12, 2021). Moreover, at present just two inmates and seven staff at Marion USP are COVID-19 positive. *COVID-19 Coronavirus*, FEDERAL BUREAU OF PRISONS,

7

https://www.bop.gov/coronavirus/ (click hyperlink reading "Full breakdown and additional details…" then find the Marion USP row in the data table) (last visited January 12, 2020). Thankfully, no additional deaths have occurred at the facility since defendant filed his Motions. *Id.* These facts further reinforce the notion that the risk for defendant contracting the virus is not imminent.

Defendant's good behavior and efforts to better himself during his incarceration are commendable, but do not constitute extraordinary and compelling circumstances warranting his release. *See* U.S.S.G. § 1B1.13, application note 3 ("Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.").

Finally, "[i]n determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Gileno*, 448 F. Supp. 3d. 183, 185 (D. Conn. 2020); *see also* 18 U.S.C. § 3582(c)(1)(A) (directing courts to consider these factors for every request for early release). Here, defendant committed a very serious crime and was implicated in five additional arsons for insurance proceeds. Arson necessarily endangers the general public and first responders, even if defendant did not intend to harm any person. To release defendant almost six years before his projected release date would undermine the seriousness of his crimes and fail to provide just punishment or adequate deterrence to criminal conduct.

For the foregoing reasons, this Court finds that defendant has not met his burden of proving that "extraordinary and compelling reasons" exist to support the requested sentence reduction.

Accordingly,

**IT IS HEREBY ORDERED** that the Motions for Compassionate Release [Doc. No.'s 73 and 81] are denied.

Dated this 12th day of January, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE